## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| MICHAEL MURPHY, Individually and for Others Similarly Situated | Case No. 2:25-cv-00815 |
| v. | Jury Trial Demanded |
| AUDUBON COMPANIES, LLC, AUDUBON FIELD SOLUTIONS, LLC, and AUDUBON ENGINEERING COMPANY, L.P. | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Michael Murphy (Murphy) brings this class and collective action to recover unpaid wages and other damages from Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. (collectively, Audubon).

2.      Audubon employs Murphy as one of its Hourly Employees (defined below), including in and around Washington County, Pennsylvania.

3.      Murphy and the other Hourly Employees regularly work more than 40 hours a workweek.

4.      But Audubon does not pay Murphy and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

5.      Instead, Audubon pays Murphy and the other Hourly Employees "per diems" and "mileage" wages that it fails to include in these employees' regular rates of pay for overtime purposes (Audubon's "per diem pay scheme").

6.      Audubon's per diem pay scheme violates the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) by failing to compensate Murphy and the other Hourly

Employees at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

7.    Likewise, Audubon's per diem pay scheme violates the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Murphy and the other Hourly Employees of earned wages, including earned overtime wages, on their regular paydays and/or following termination of employment.

## JURISDICTION & VENUE

8.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.    This Court also has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

10.    This Court has general personal jurisdiction over Audubon because it is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

11.    Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in Washington County, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

12.    Specifically, Audubon employed Murphy and other Hourly Employees in and around Washington County, Pennsylvania under its per diem pay scheme.

## PARTIES

13.    Audubon has employed Murphy as a safety inspector since approximately May 2023.

14.    Throughout his employment, Audubon has paid Murphy under its per diem pay scheme.

15.    Murphy's written consent is attached as **Exhibit 1**.

16.    Murphy brings this class and collective action on behalf of himself, and all other Audubon employees paid under its per diem pay scheme.

17.    The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Audubon employees who were paid a per diem at any time during the last three years through final resolution of this action (the "FLSA Collective Members").**

18.    The putative Pennsylvania class of similarly situated employees is defined as:

> **All hourly Audubon employees who worked in, or were based out of, Pennsylvania[1] who were paid a per diem at any time during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

19.    The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

20.    Audubon Companies, LLC is a Texas limited liability company headquartered in Metaire, Louisiana.

21.    Audubon Companies, LLC can be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

22.    Audubon Field Solutions, LLC is a Louisiana limited liability company headquartered in Metaire, Louisiana.

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

23.     Audubon Field Solutions, LLC can be served with process by serving its officers, directors, managing agents, or general agents at its registered office: **1515 Market St. Ste. 1210, Philadelphia, Pennsylvania 19102.**

24.     Audubon Engineering Company, L.P. is a Texas limited partnership headquartered in Metaire, Louisiana.

25.     Audubon Engineering Company, L.P. can be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

26.     Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. function as a single enterprise for purposes of the FLSA and Pennsylvania wage law.

27.     These Audubon entities utilize the same centralized, payroll, human resources, and legal departments, which they refer to as "Shared Services."

28.     For example, Shared Services made the decision to reclassify its inspectors, including Murphy and other Hourly Employees, from a day rate and no overtime pay structure to hourly, non-exempt employees paid premium overtime wages.

### FLSA COVERAGE

29.     At all relevant times, Audubon was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

30.     At all relevant times, Audubon was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

31.     At all relevant times, Audubon was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

32.    At all relevant times, Audubon had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

33.    At all relevant times, Murphy and the other Hourly Employees were Audubon's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

34.    At all relevant times, Murphy and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

<strong>FACTS</strong>

35.    Audubon touts that it "provides reliable, integrated EPC services with flexibility and expertise. Building on our past and focusing on the future, we generate sustainable, turnkey solutions for global industrial operators."[2]

36.    To meet its business objectives, Audubon employs workers, including Murphy and the other Hourly Employees.

37.    For example, Audubon has employed Murphy as a safety inspector since approximately May 2023 in Pennsylvania and West Virginia.

38.    As safety inspector, Murphy' job duties include travelling to various oil and gas pipeline job sites to ensure work is being performed safely, in accordance with Audubon's and its clients' (MPLX) policies and procedures.

39.    Murphy regularly works more than 40 hours in a workweek.

40.    Indeed, Murphy typically works approximately 10 to 14 hours a day for 5 to 6 days a week (50 to 84 hours a workweek).

---

[2] https://auduboncompanies.com/who-we-are/about-us/ (last visited June 11, 2025).

41.    And Audubon pays Murphy approximately $22.55 an hour.[3]

42.    Likewise, the other Hourly Employees typically work approximately 10 to 14 hours a day for 6 days a week "on the clock" (50 to 84 hours a workweek).

43.    Audubon requires Murphy and the other Hourly Employees to record working a pre-scheduled 10-hour shift each workday.

44.    At the end of each pay period, Murphy and the other Hourly Employees receive wages from Audubon that are determined by common systems and methods that Audubon selects and controls.

45.    But Audubon does not pay Murphy and the other Hourly Employees at the required overtime rate for all hours worked in excess of 40 a workweek.

46.    Instead, Audubon pays Murphy and the other Hourly Employees under its per diem pay scheme.

47.    Specifically, Audubon pays Murphy and the other Hourly Employees "per diem" and "mileage" wages that it fails to include in these employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

48.    For example, Audubon pays Murphy a $200 a day "per diem," which Audubon increased from $150 a day in February 2025, when Audubon converted Murphy from a day rate pay structure to an hourly pay structure, to continue his total wages at approximately the same dollar amount, rather than to reimburse him for expenses.

49.    Moreover, Murphy does not work away from his permanent residence overnight, but rather does home to his permanent residence at the end of each workday.

_____

[3] Until approximately February 2025, Audubon paid Murphy a flat daily sum and no premium overtime wages.

50.     Likewise, Audubon pays Murphy "mileage" of 100 miles a day, regardless of how far he drives in a given workday, which Audubon increased from a guaranteed 40 miles a day when it paid him under a day rate pay structure.

51.     Despite more than doubling the "mileage" it pays Murphy when it transitioned his pay structure from a day rate to hourly basis, the distance Murphy travelled did not change.

52.     The "mileage" Audubon pays Murphy is not meant to reimburse him for distances driven but rather is merely additional wages for work.

53.     And Audubon imposes the same policies and procedures on the other Hourly Employees.

54.     Thus, under its per diem pay scheme, Audubon fails to pay Murphy and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on *all* remuneration—for all hours they work in excess of 40 in a workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

55.     Murphy brings his claims as a class action under Pennsylvania law pursuant to FED. R. CIV. P. 23 and a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

56.     Like Murphy, the other Hourly Employees are victimized by Audubon's per diem pay scheme.

57.     Other Hourly Employees worked with Murphy and indicated they were paid in the same or similar manner under Audubon's per diem pay scheme.

58.     Based on his experiences with Audubon, Murphy is aware Audubon's per diem pay scheme was imposed on other Hourly Employees.

59.     The Hourly Employees are similarly situated in the most relevant respects.

60.    Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

61.    Therefore, the specific job titles and locations of the Hourly Employees do not prevent class or collective treatment.

62.    Rather, Audubon's per diem pay scheme renders Murphy and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

63.    Audubon's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

64.    Audubon's records also show it paid the Hourly Employees "per diems" and guaranteed "mileage" it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

65.    The back wages owed to Murphy and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

66.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Audubon's records, and there is no detraction from the common nucleus of liability facts.

67.    Therefore, the issue of damages does not preclude class or collective treatment.

68.    Murphy's experiences are therefore typical of the experiences of the other Hourly Employees.

69.    Murphy has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

70.     Like each Hourly Employee, Murphy has an interest in obtaining the unpaid wages owed under Pennsylvania and federal law.

71.     Murphy and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

72.     Murphy retained counsel with significant experience in handling complex class and collective action litigation.

73.     Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Audubon will reap the unjust benefits of violating the FLSA and Pennsylvania law.

74.     Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

75.     Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Audubon.

76.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

77.     The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

78.     Among the common questions of law and fact are:

    a.     Whether Audubon paid the Hourly Employees "per diems" and/or guaranteed "mileage";

    b.     Whether Audubon failed to include these "per diems" and/or guaranteed "mileage" in calculating the Hourly Employees' regular rates of pay;

    c.     Whether Audubon failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

d.     Whether Audubon's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

e.     Whether Audubon's violations were willful?

79.     As part of its regular business practices, Audubon intentionally, willfully, and repeatedly violated the FLSA and Pennsylvania law with respect to Murphy and the other Hourly Employees.

80.     Indeed, Audubon (along with related entities) has previously been sued for failing to pay overtime wages at the required rate for all overtime hours worked on numerous occasions. *See e.g.*, *Walker v. Audubon Companies, et al.*, No. 2:2025-cv-00764-MPK (W.D. Pa.). *Owen v. Audubon Field Solutions, LLC*, No. 2:2024-cv-00215 (D.N.M.); *Vera v. Audubon Field Solutions, LLC*, No. 4:24-cv-04534 (S.D. Tex.); *Cencarik v. Audubon Field Solutions*, No. 2:22-cv-03566-BSL-JVM (E.D. La.); *Walker v. Marathon Petroleum Corporation, et al.*, No. 2:22-cv-01273-NR (W.D. Pa.); *Beard v. Audubon Field Solutions, LLC*, No. 2:16-cv-12354-NJB-DEK (E.D. La.); *Bruchi, et al. v. Audubon Field Solutions, LLC*, No. 2:16-cv-15755-ILRL-KWR (E.D. La.).

81.     Audubon's per diem pay scheme deprived Murphy and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—they are owed under federal and Pennsylvania law.

82.     There are many similarly situated Hourly Employees who have been denied overtime wages at the required rate—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

83.     The Hourly Employees are known to Audubon, are readily identifiable, and can be located through Audubon's business and personnel records.

**AUDUBON'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND**

### NOT THE RESULT OF A *BONA FIDE* DISPUTE

84.     Audubon knew it employed Murphy and the other Hourly Employees.

85.     Audubon knew it was subject to the PMWA's and FLSA's overtime provisions.

86.     Audubon knew the PMWA and FLSA required it to pay non-exempt employees, including Murphy and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

87.     Audubon knew it was subject to the WPCL.

88.     Audubon knew the WPCL required it to pay employees, including the Pennsylvania Class Members, all wages (including overtime) earned on their regular paydays and following the termination of their employment.

89.     Audubon knew Murphy and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours worked to Audubon via its timekeeping system.

90.     Audubon knew Murphy and the other Hourly Employees were non-exempt employees entitled to overtime pay.

91.     Audubon knew it paid Murphy and the other Hourly Employees "per diems" and guaranteed "mileage" it was required to include in their regular rates of pay.

92.     Audubon knew these "per diems" and guaranteed "mileage" were not included in Murphy's and the other Hourly Employees' regular rates of pay for overtime purposes.

93.     Audubon's failure to pay Murphy and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

94.     Audubon's refusal to pay the Pennsylvania Class Members earned wages for all hours worked on their regular paydays and following the termination of their employment was unreasonable.

95.    Audubon's failure to pay the Pennsylvania Class Members their earned wages was not the result of a *bona fide* dispute.

96.    Audubon knew its conduct violated the FLSA, PMWA, and WPCL.

97.    Audubon knowingly, willfully, and/or in reckless disregard carried out its unlawful per diem pay scheme that deprived Murphy and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA, PMWA, and WPCL.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

98.    Murphy bring their FLSA claim as a collective action on behalf of themselves and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

99.    Audubon violated, and is violating, the FLSA by employing non-exempt employees such as Murphy and the other FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

100.    Audubon's unlawful conduct harmed Murphy and the other FLSA Collective Members by depriving them of overtime wages they are owed.

101.    Accordingly, Audubon owes Murphy and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

102.    Because Audubon knew or showed reckless disregard for whether this per diem pay scheme violated the FLSA, Audubon owes Murphy and the other FLSA Collective Members these wages for at least the past 3 years.

103.    Audubon is also liable to Murphy and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

104.    Finally, Murphy and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

### COUNT II
**FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA**
**(PENNSYLVANIA CLASS)**

105.    Murphy brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

106.    Audubon's conduct violated the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

107.    At all relevant times, Audubon was subject to the PMWA because Audubon was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

108.    At all relevant times, Audubon employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

109.    The PMWA requires employers, like Audubon, to pay non-exempt employees, including Murphy and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

110.    Audubon violated, and is violating, the PMWA by employing non-exempt employees, including Murphy and the other Pennsylvania Class Members for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

111.    Audubon's unlawful conduct harmed Murphy and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

112.    Accordingly, Audubon owes Murphy and the other Pennsylvania Class Members the difference between the wages actually paid and the required overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

113.    Finally, Murphy and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

<u>COUNT III</u>
**FAILURE TO PAY EARNED WAGES UNDER THE WPCL**
**(PENNSYLVANIA CLASS)**

114.    Murphy brings his WPCL claims as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

115.    Audubon's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

116.    At all relevant times, Audubon was subject to the WPCL because Audubon was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

117.    At all relevant times, Audubon employed Murphy and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

118.    The WPCL requires employers, like Audubon, to pay employees, including Murphy and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

119.    Audubon violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following termination of employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

120.    Murphy's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

121.    Audubon's unlawful conduct harmed Murphy and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

122.    Audubon's failure to pay Murphy and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

123.    Rather, Audubon knowingly failed to pay earned wages to Murphy and the other Pennsylvania Class Members.

124.    Accordingly, Audubon owes Murphy and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

125.    Audubon also owes Murphy and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid earned wages. *See* 43 PA. STAT. § 260.10.

126.    Finally, Murphy and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

### JURY DEMAND

127.    Murphy demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Murphy, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

    b.    An Order designating this action as a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Murphy and his counsel to represent the interests of the Pennsylvania Class Members;

d.      An Order finding Audubon liable to Murphy and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e.      An Order finding Audubon liable to Murphy and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f.      An Order finding Audubon liable to Murphy and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

g.      A Judgment against Audubon awarding Murphy and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and/or WPCL;

h.      An Order awarding attorney's fees, costs, and expenses;

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Date:   June 13, 2025

Respectfully submitted,

**JOSEPHSON DUNLAP LLP**

By: _/s/ Michael A. Josephson_
Andrew W. Dunlap, Esquire
TX Bar No. 24078444
Michael A. Josephson, Esquire
PA ID No. 308410
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch, Esquire
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

Joshua P. Geist, Esquire
PA ID No. 85745
William F. Goodrich, Esquire
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com

**ATTORNEYS FOR MURPHY AND THE HOURLY EMPLOYEES**