**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL MURPHY, Individually and for
Other Similarly Situated,

           Plaintiff,

           v.

AUDUBON COMPANIES, LLC.,
AUDUBON ENGINEERING COMPANY,
L.P., and AUDUBON FIELD SOLUTIONS,
LLC.,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:25 CV 815
Magistrate Judge Maureen P. Kelly

Re: ECF No. 15

**MEMORANDUM OPINION**

**MAUREEN P. KELLY, United States Magistrate Judge**

Plaintiff Michael Murphy ("Murphy") brings claims against Defendants Audubon Companies, LLC, Audubon Engineering Company, L.P., and Audubon Field Solutions, LLC (collectively, "Audubon"), for their failure to pay wages that he and other employees like him are owed. ECF No. 1. Specifically, Murphy alleges that Audubon omitted per diem and mileage payments that should have been included in their regular rate of pay when determining the company's overtime obligations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act, ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law, ("WPCL"), 43 P.S. § 260.1, *et seq.* Id.

Audubon responded to the Complaint with the pending Motion to Dismiss or, in the alternative, Motion to Transfer. ECF No. 15. Audubon first challenges the Court's exercise of personal jurisdiction over each Audubon entity because all are Texas and Louisiana limited liability companies headquartered in Louisiana. Id., see also ECF No. 1 at ¶¶ 20-26. Audubon

next moves to dismiss Murphy's PMWA and WPCL claims for failure to state a claim. In the alternative, Audubon requests that the Court transfer this action to the Southern District of Texas, Houston Division, or to the Eastern District of Louisiana, New Orleans Division. For the reasons set forth in this Memorandum, the Motion to Dismiss will be granted in part, denied in part, and the alternative Motion to Transfer will be denied.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Audubon is an employer engaged in multi-state engineering, procurement, and construction services for industrial operators.[2] ECF No. 1 ¶ 35. To meet its business objectives, Audubon employs workers, including Murphy and other hourly employees. Id. ¶ 36.

Audubon employed Murphy as a safety inspector in Pennsylvania and West Virginia beginning in May 2023. Id. ¶ 37. Murphy's job duties require him to travel to various oil and gas pipeline job sites to ensure work is performed safely. Id. ¶ 38. Murphy regularly works more than 40 hours in a work week, and typically as much as 50-84 hours each week. Id. ¶ 40. His hours are similar to other Audubon hourly employees. Id. ¶ 42.

At the end of each pay period, Murphy and other hourly employees receive wages in accordance with Audubon's shared payroll system. Id. ¶ 44. Until February 2025, Audubon paid employees a flat daily pay rate plus expenses and without premium overtime wages. In February 2025, Audubon adopted a new hourly system that continued to pay hourly wages at approximately the same dollar amount, with fixed per diem and mileage wages. Id. n. 3, ¶ 48. But Audubon failed

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF Nos. 55 and 56.

[2] The facts are taken from the Complaint and accepted as true at this stage of the litigation. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (When presented with a motion to dismiss, "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

to include the per diem and mileage wages in the regular rate of pay when calculating overtime. Thus, Murphy alleges that Audubon violated the FLSA by failing to pay Murphy and other hourly workers 1.5 times their regular rate of pay based on all remuneration for all hours worked in excess of 40 in a work week. Id. ¶ 4; see also 29 U.S.C. § 207(e); Stone v. Troy Construction, LLC, 935 F.3d 141 (2019). Two other Audubon employees have filed notices of consent, seeking to join Murphy's potential collective action to recover unpaid wages. ECF No. 36.

Audubon responds to the Complaint with the pending Motion to Dismiss or, in the alternative, Motion to Transfer, and brief in support. ECF Nos. 15 and 16. Audubon contends that the Court cannot exercise general or specific personal jurisdiction over any Audubon entity as to Murphy's claims or the claims of any opt-in plaintiff who cannot establish a connection to Pennsylvania. ECF No. 16 at 13-23. Audubon also argues that Murphy cannot state a claim under the PMWA or WPCL because he "never worked in nor has he ever been based out of Pennsylvania" and, as to his WPCL claim, he cannot establish a contractual obligation to receive pay for allegedly uncompensated activities. Id. at 23-29. Finally, Audubon moves to transfer this case to a federal district court in Louisiana or Texas in service of public and private interests. Id. at 29-38.

Murphy filed his Brief in Opposition, with exhibits supporting his claim that he worked in Pennsylvania on behalf of Audubon. ECF No. 26.

Audubon filed a reply brief with the declaration of a manager who concedes that he assigned Murphy to work in Pennsylvania for at least two months. ECF No. 33-1 ¶ 14. Thus, Audubon now challenges the sufficiency of that short-term assignment to establish personal jurisdiction or as a basis to oppose transfer of this action. ECF No. 33. Murphy filed a sur-reply in

opposition to the Motion to Dismiss. ECF No. 46. Audubon filed a response to the sur-reply. ECF No. 52.

The Motion to Dismiss or, in the alternative Motion to Transfer Venue is ripe for consideration.

## II.    DISCUSSION

### A.    Personal Jurisdiction

#### 1.    Applicable Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." Strata Skin Scis., Inc. v. LaserOptek Am. Corp., et al., No. 24-4138, 2026 WL 181486, at *2 (E.D. Pa. Jan. 21, 2026) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)). Where, as here, the Court declines to hold an evidentiary hearing, and declines a request for jurisdictional discovery, the "plaintiff[] need only establish a *prima facie* case of personal jurisdiction" and is "entitled to have [his] allegations taken as true." Colur World, LLC v. Supmedic, Inc., 801 F. Supp. 3d 524, 529 (E.D. Pa. 2025) (quoting O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3rd Cir. 2007)).

To establish a prima facie case, a plaintiff must present sworn affidavits or other competent evidence. "[A]t no point may a plaintiff rely on the bare pleadings alone" to withstand a defendant's motion to dismiss for lack of in personam jurisdiction. Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984)). "Any conflicts between the evidence submitted by the plaintiff and the defendant must be construed in the plaintiff's favor." In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010), *aff'd,*

683 F.3d 462 (3d Cir. 2012) (citing <u>Barrett v. Catacombs Press</u>, 44 F. Supp. 2d 717, 722 (E.D. Pa. 1999).

If the court denies the motion to dismiss because the plaintiff bears his burden at the motion to dismiss stage, the moving party may later raise the issue of the exercise of personal jurisdiction. Whether at a pre-trial hearing or at trial, the nonmoving party must establish by a preponderance of the evidence that the exercise of personal jurisdiction over the moving party is proper. <u>Id.</u>

**2.     Personal Jurisdiction for Claims Presented**

Audubon moves to dismiss this action for lack of personal jurisdiction for two reasons. First, Audubon contends Murphy is not a resident of Pennsylvania and "never worked in" nor was based in Pennsylvania. ECF No. 16 at 11. Second, Pennsylvania cannot be considered Audubon's home state. Thus, Audubon argues that there are no facts to support the constitutional exercise of the Court's general personal jurisdiction over it. The Court disagrees.

The first basis for dismissal is readily disposed of at this initial stage of the litigation. As alleged by Murphy and conceded by Audubon's Manager of Inspection, Murphy worked in Pennsylvania for several months in 2025. ECF No. 26-4; ECF No. 33-1 at 3-4.[3] As to the second argument, Audubon expressly consented to general personal jurisdiction by registering to do business in Pennsylvania. Therefore, the exercise of general jurisdiction does not violate the United States Constitution.

The United States Supreme Court identified three types of personal jurisdiction over an out-of-state corporate defendant that comport with the Due Process Clause of the United States

---

[3] The Court notes Audubon's obligations under Fed. R. Civ. P. 11(b) (imposing a duty on an attorney who presents a motion to conduct reasonable inquiry that a defense is warranted on the evidence and that factual assertions "will likely have evidentiary support"). In this case, Audubon's representation that Murphy "never" worked in Pennsylvania was retracted after Murphy presented employment records that include assignments in Pennsylvania. ECF Nos. 26 and 33. Those records, including text messages with assignments, were generated by Audubon employees and thus equally available to Audubon prior to filing its Motion to Dismiss. <u>See</u> ECF No. 26-4.

Constitution. Mallory v. Norfolk S. Ry. Co., 600 U.S. 122 (2023). First, "specific jurisdiction" permits suits that "'arise out of or relate to'" a corporate defendant's activities in the forum State. Second, "general jurisdiction" allows all kinds of suits against a corporation, but only in States where the corporation is incorporated or has its "principal place of business." Id. at 137 (internal citations omitted). And third, general personal jurisdiction exists when a corporation consents to jurisdiction to conduct business in the forum. Id. at 138.

In Mallory, Norfolk Southern challenged general personal jurisdiction based on consent as a violation of its due process rights under the Fourteenth Amendment. Norfolk Southern argued that its rights were violated by Pennsylvania's statutory requirement that an out-of-state corporation consent to general personal jurisdiction as a condition to conduct business within the Commonwealth, even in cases where there is no direct connection between Pennsylvania, the parties, or the claim. Id. at 127; see 42 Pa. Cons. Stat. § 5301(a)(2)(i) (requiring foreign corporations who register to do business in Pennsylvania to submit to general personal jurisdiction of Pennsylvania state courts).

A majority of five sitting Justices held that, in keeping with controlling precedent, the statute did not deny an out-of-state corporate defendant due process of law. Id. at 134 (Gorsuch, Thomas, Alito, Sotomayor, and Jackson, JJ. joined in opinion of the Court with respect to Part III-B) (citing Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co., 243 U.S. 93 (1917)). Pennsylvania's grant of general jurisdiction as a consequence of registration is explicit and, in exchange, registration confers benefits. To that end, Pennsylvania law provides that upon compliance with the registration process, an out-of-state corporation "'shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties … imposed on domestic entities.'" Id. at 134 (quoting 15 Pa. Cons. Stat. § 402(d)).

By registering, as noted by a plurality of the Court, Norfolk "presumably … thought the benefits outweighed the costs." Id. at 144.

Audubon argues that Mallory is nonbinding and therefore not controlling. ECF No. 33 at 9; ECF No. 52 at 1. But a majority of the Mallory Court held that Pennsylvania Fire controls and remains good law. Thus, Audubon's arguments to the contrary, it is well settled that Pennsylvania's registration statute does not deny a defendant due process of law. Mallory, 600 U.S. at 135, 150.

Audubon concedes it registered to do business as a foreign corporation in Pennsylvania and that it assigned employees, including Murphy and other inspectors like him, to work in Pennsylvania.[4] ECF No. 16 at 15; ECF No. 33-1 ¶ 4 ("From Friday July 7, 2025 through September 12, 2025, Murphy worked on the MPLX Green Valley LW Safety Inspection Project … which is located in Pennsylvania."). Therefore, Audubon consented to the Court's exercise of general personal jurisdiction.

To avoid its voluntary consent to general jurisdiction, Audubon argues that "the Court should follow Supreme Court Justice Alito's analysis" from his concurring opinion in Mallory and hold that Pennsylvania's foreign corporation registration law violates the dormant Commerce Clause of the United States Constitution.[5] ECF No. 16 at 16; ECF No. 33 at 9. Audubon contends that Justice Alito's analysis has particular sway where the claims at issue "are made by non-Pennsylvania FLSA collective members that have no connection to Pennsylvania." In such

---

[4] The Court takes judicial notice of Audubon's recent identification of three other FLSA cases brought by its employees against Audubon or its customers arising from Audubon's placement of inspectors in the Commonwealth of Pennsylvania. See Defendant's Motion to Quash Subpoena, Owen v. Audubon Field Solutions, Inc., No. 25-0070 (E.D. Pa. Dec. 18, 2025), Dkt. No. 1 at 5.

[5] No other Justice joined in Justice Alito's concurring opinion.

situations, "the 'practical effect' of Section 5301 is to disadvantage and discriminate against out-of-state companies such as Defendants to the benefit of in-state competitors 'by forcing [Defendants] to increase their exposure to suits on all claims in order to access Pennsylvania's market while Pennsylvania companies generally face no reciprocal burden for expanding operations into another State.'" Id. at 16 (citing Mallory, 600 U.S. at 161 (Alito, J., concurring)). Under the facts presented, the Court is not persuaded that application of Pennsylvania's registration statute is unconstitutional under the Commerce Clause.

Briefly, the Commerce Clause grants Congress the power to regulate commerce between the states. The Clause "has long been understood to have a 'negative aspect' that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Hegna v. Smitty's Supply, Inc., No. 16-3613, 2017 WL 2563231, at *4 (E.D. Pa. June 13, 2017) (quoting Tr-M Grp., LLC v. Sharp., 638 F.3d 406, 418 (3d Cir. 2011) (in turn quoting Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or., 511 U.S. 93, 98 (1994)). Thus, "state regulations may not discriminate against interstate commerce; and … States may not impose undue burdens on interstate commerce." S. Dakota v. Wayfair, 585 U.S. 162, 173 (2018).

Justice Alito posits that, "[t]here is reason to believe that Pennsylvania's registration-based jurisdiction law discriminates against out-of-state companies. But at the very least, the law imposes a 'significant burden' on interstate commerce by '[r]equiring a foreign corporation … to defend itself with reference to all transactions,' including those with no forum connection." Mallory, 600 U.S. at 161.

Audubon, like Justice Alito, relies on Davis v. Farmers' Co-op Equity Co., 262 U.S. 312 (1923). In Davis, a Kansas corporation filed suit in Minnesota against another Kansas corporation for a claim arising entirely in Kansas. Jurisdiction was based on a Minnesota statute that compelled

8

a "foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state." Id. at 315. The Supreme Court held that under the circumstances before it, the statute imposed "a serious and unreasonable burden, which renders the statute obnoxious to the commerce clause." Id. The Supreme Court distinguished Davis just eleven years later in Int'l Mill. Co. v. Columbia Transp. Co., 292 U.S. 511 (1934), and observed that Davis "was confined narrowly within the bounds of its own facts" because, among other reasons, "[t]he cause of action had no relation to any local activity." Id. at 517; see also AK Steel Corp. v. PAC Operating Ltd. P'ship., No. 15-9260, 2017 WL 3314294, at *6 (D. Kan. Aug. 3, 2017) (no discrimination against interstate commerce where party's local activities demonstrate a relationship to jurisdiction).

Here, there is no dispute that Murphy worked for Audubon in Pennsylvania for a portion of the time at issue. Thus, Murphy presents a claim arising from Audubon's alleged wage law violations in Pennsylvania and, unlike Davis, the cause of action bears a relationship with Audubon's local activity. Audubon likely weighed the economic benefits of its ongoing in-state activity and determined that consent to general jurisdiction did not impose an undue burden. As applied to the facts alleged in the Complaint and the record before the Court, Pennsylvania's general personal jurisdiction statute does not violate the dormant Commerce Clause. The Motion to Dismiss Murphy's claims for lack of personal jurisdiction is denied without prejudice.

Audubon also contends that under Third Circuit precedent, the Court lacks specific personal jurisdiction over the claims of employees who seek to opt-in to the suit but who cannot demonstrate that their claims arise out of Audubon's minimum contacts with Pennsylvania. ECF No. 16 at 21-23 (citing Fischer v. Fed. Express Corp., 42 F.4th 366, 387 (3d Cir. 2022)). Fischer resolved "whether, in an FLSA collective action in federal court *where the court lacks general personal jurisdiction over the defendant*, all opt-in plaintiffs must establish specific personal

jurisdiction over the defendant with respect to their individual claims." Id. (emphasis added). Because this Court has general personal jurisdiction over Audubon, it does so for all claims presented, including the claims of all opt-in plaintiffs. Id. at 383 ("general personal jurisdiction is broader than specific personal jurisdiction, reaching all potential claims against the defendant regardless of their connection to the state"). See also Thurlow v. Nat'l Inspection Servs., LLC., No. 24-1135, 2025 WL 408352, at *6 (W.D. Pa. Feb. 6, 2025) (Fischer does not bar opt-in claims of collective action members who are not based in Pennsylvania because the Court has general personal jurisdiction over defendant). The Motion to Dismiss opt-in claims is also denied without prejudice.

### B.     Motion to Dismiss for Failure to State a Claim

#### 1.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct...," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009), and "raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" Mergl v. Wallace, No. 2:21-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) and Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" Mergl, 2022 WL

4591394, at *3 (quoting City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp., 908 F.3d 872, 878–79 (3d Cir. 2018) and James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012)).

### 2.    PMWA and WPCL Claims

Audubon moves to dismiss Murphy's claim under the PMWA and WPCL because Murphy does not sufficiently allege that he worked in Pennsylvania during the 3-year statute of limitations for the PMWA and WPCL. ECF No. 16 at 25. Murphy alleges that Audubon "employed [him] as a safety inspector since approximately May 2023 in Pennsylvania and West Virginia." ECF No. 1 ¶ 37. At this stage of the litigation, Murphy's allegations are taken as true, Iqbal, 556 U.S. at 678, and as confirmed by Audubon's Manager of Inspection, Murphy worked for Audubon in Pennsylvania. See ECF No. 33-1 ¶ 14. Thus, the Motion to Dismiss based on the sufficiency of Murphy's allegations connecting him to Pennsylvania is denied.

Audubon also argues that Murphy fails to state a WPCL claim because he does not allege the existence of an employment contract upon which his claims are based. ECF No. 16 at 26-29. Alternatively, Audubon contends that Walker fails to state a plausible WPCL overtime wage claim.

"'The [WPCL] provides employees a statutory remedy to recover wages and other benefits that are contractually due to them.'" Timko v. NSPA Lounge LLC, No. 2:23-1307, 2025 WL 2162470, at *22 (W.D. Pa. July 30, 2025) (quoting Oberneder v. Link Comput. Corp., 696 A.2d 148, 150 (Pa. 1997)).

> "[T]o state a plausible WPCL claim, a plaintiff employee must allege facts demonstrating that he or she was deprived of compensation the employee has earned according to the terms of his or her contract with the defendant employer." Thompson v. IntelyCare, Inc., No. 22-1599, 2025 WL 745224, at *6 (W.D. Pa. Mar. 7, 2025) (Colville, J.); see also Minehan v. McDowell, No. 21-5314, 2023 WL 5432508, at *15 (E.D. Pa. Aug. 22, 2023) ("To prevail on a WPCL claim, a plaintiff must establish: (1) the entity that withheld wages from the plaintiff is an 'employer' under the WPCL; (2) the plaintiff is contractually owed the withheld wages; and (3) the employer, in fact, withheld the contractually owed wages."), aff'd, No. 23-2737, 2024 WL 4403873 (3d Cir. Oct. 4, 2024).

11

Timko, 2025 WL 2162470, at *22.

It is not disputed that Audubon is an employer under the WPCL. But, as a prerequisite to his WPCL claim, Murphy must allege facts to support the existence of an agreement with Audubon. Schupack v. Marketvision Rsch., Inc., No. 16-6233, 2017 WL 2828687, at *3 (E.D. Pa. June 29, 2017) (citing De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (to pursue a claim under the WPCL, a plaintiff must show the existence of an employment contract, an implied oral contract, or a collective bargaining agreement); Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. 2011), aff'd, 106 A.3d 656 (Pa. 2014) (confirming that "an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract").

An implied oral contract for wages arises "when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." McEnheimer v. Walmart, Inc., No. 22-46, 2022 WL 3700911, at *1 (W.D. Pa. Aug. 26, 2022) (quoting Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015)). "'[A] promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service.'" Id. Thus, a WPCL claim will survive dismissal when the plaintiff alleges facts to support an implied agreement that services were performed in exchange for wages to be paid at a specific rate. Schupack, 2017 WL 2828687, at *3 (citing Gordon v. Maxim Healthcare Servs., Inc., No. 13-7175, 2014 WL 3438007, at 4 (E.D. Pa. July 15, 2014) (WPCL claim is stated in the absence of a written employment agreement because plaintiff alleged that "she provided services as a home healthcare aide in exchange for wages to be paid according to a week-long pay period.")).

12

Murphy alleges he was an Audubon employee and that he was required to record his hours for each workday. ECF No. 1 ¶ 43. In exchange for work performed on Audubon's behalf, Murphy was paid at the end of each pay period in accordance with Audubon's amended per diem pay schedule. Id. ¶ 44. Murphy alleges he received an hourly wage of $22.00, plus a per diem of $200 per day regardless of actual expenses, and mileage of 100 miles a day no matter how far he drove for work. Id. ¶¶ 45-47. These allegations are sufficient to find that there was an implied employment contract to pay wages for all hours worked.

Yet, construing the Complaint in the light most favorable to Murphy, the allegations do not support a contractual claim – implied or otherwise – for pay at a higher rate for hours worked in excess of 40 per week. Thus, Murphy fails to state a WPCL claim for overtime pay at a higher rate. See Oxner, 132 F. Supp. 3d at 650-51 (plaintiff's WPCL claim for overtime pay at a higher rate was not supported by allegations of a promise or implied agreement of additional compensation and was a legal conclusion "couched as a fact"); compare Bogo v. Zator L., LLC, No. 24-4685, 2025 WL 1116534, at *4 (E.D. Pa. Apr. 15, 2025) (allegations that plaintiff was entitled to break pay pursuant to company policy sufficient to set forth an alleged contractual right for a WPCL claim). Audubon's Motion to Dismiss any WPCL claim for overtime pay at a higher rate than the agreed upon regular wage is granted and the claim is dismissed without prejudice and with leave to amend. The Motion to Dismiss Murphy's PMWA and WPCL claims is otherwise denied.

### C.      Motion to Transfer Venue

#### 1.      Legal Standard

Audubon brings a Motion to Transfer Venue under 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." When deciding motions to transfer, courts in the Third Circuit consider private and public interest factors which stretch beyond those enumerated in Section 1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

> Private interests include:
>
> Plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. (internal citations omitted). Public interests to be considered include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

### 2. Transfer of Venue is not Warranted.

The Court must first determine whether this action could have been brought in either of Audubon's proposed transferee districts. Stevens v. USA Today Sports Media Grp., LLC, No. 1:23-1367, 2024 WL 1285535, at *2 (M.D. Pa. Mar. 26, 2024) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)). Venue is proper in judicial districts where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C.

14

§ 1391(b). A defendant that is a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). "In the context of a FLSA case, suit may be brought where the 'alleged FLSA violation – the failure to pay overtime wages – occurred ... where Plaintiffs worked [and] where Defendant is headquartered and would have established policies giving rise to the FLSA violation.'" Stevens, 2024 WL 1285535, at *2 (quoting Stewart v. First Student, Inc., 639 F. Supp. 3d 492, 499 (E.D. Pa. 2022)).

It is no longer disputed that at least a portion of Audubon's alleged FLSA violations occurred in Pennsylvania, where Murphy filed this action. Audubon claims that it maintains its principal place of business within the United States District Court for the Southern District of Texas, where the relevant human resource and payroll policy witnesses are located. Audubon also proposes the United States District Court for the Eastern District of Louisiana as an alternative, where it maintains its headquarters and is subject to general personal jurisdiction. ECF No. 16 at 30. Because venue is proper in all three district courts under Section 1391, the Court will apply the balancing test under 28 U.S.C. § 1404(a) to determine whether the case should proceed in the Western District of Pennsylvania or is properly transferred to Texas or Louisiana.

### a. Private Interest Factors

The first factor – plaintiff's forum preference – guides the Court's discretion because "plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879. Murphy resides in West Virginia. Thus, "this factor is not accorded with the usual strong preference or weight," but weighs marginally in Murphy's favor as his preferred forum. Siegel v. Homestore, Inc., 255 F. Supp. 2d 451, 457 (E.D. Pa. 2003).

The second factor – defendant's choice of forum – "is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." Stewart, 639 F. Supp. 3d at 499. This factor is neutral given the relative proximity of Murphy's residence to the Western District of Pennsylvania than either of Audubon's proposed options, making transfer inconvenient for him.

The third factor – whether the claim arose elsewhere – also is neutral. "A FLSA claim is considered to have arisen either where the plaintiffs worked (where the challenged policies were effectuated) or from the employer's headquarters (where the employer would have determined and maintained the challenged policies and practices)." Id. It is undisputed that Murphy worked for a time in Pennsylvania. Audubon asserts that its payroll policies and practices were established or effectuated in Texas or Louisiana. Thus, this factor does not favor one district over another and is neutral.

The fourth factor – convenience of the parties – weighs heavily in Murphy's favor. "This factor evaluates the parties 'relative physical and financial condition[s],' Jumara, 55 F.3d at 879, including who can 'afford more easily the inconveniences associated with travel' to the transferee forum." Stewart, 639 F. Supp. 3d at 500. Murphy resides in Marshall County, West Virginia, which is approximately 70 miles from the Western District of Pennsylvania. ECF No. 1-1 at 1. Thus, Murphy could more easily bear the costs of litigating in Pennsylvania than the cost of litigating in Texas or Louisiana, where he would incur much greater transportation and necessary lodging costs. Audubon is a national corporation that provides services in multiple states, including Pennsylvania, and is in a better financial condition to afford the cost of litigating in the Western District of Pennsylvania. Given the relative financial positions of the parties, this factor weighs against transfer.

The fifth factor – convenience of the witnesses – is considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" Jumara, 55 F.3d at 879. Audubon asserts that the witnesses to its payroll practices and processes, as well as its general counsel, are in Texas or Louisiana. ECF No. 16 at 36-37. However, Audubon does not contend that its own employees would be unavailable for trial in the Western District of Pennsylvania. Thus, this factor is neutral.

The sixth favor – locations of books and records – is neutral. Audubon asserts that the relevant documents are housed at its offices in Texas and Louisiana. ECF No. 16 at 37. But advances in technology and document storage and reproduction give this factor limited significance when weighing the convenience of the parties, and Audubon provides no basis for finding otherwise. Stewart, 639 F. Supp. 3d at 500.

On balance, the private interest factors weigh against transfer of this action to either of Audubon's preferred venues.

### b. Public Interest Factors

The public interest factors also weigh against transfer.

No party has argued that the first factor – enforceability of judgment – weighs for or against transfer given that a judgment in an FLSA case would be equally enforceable in any of three identified jurisdictions. Id. at 500-01 (citing Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021).

The second public interest factor – practical considerations of trial logistics – is neutral. Murphy asserts that he and other employees impacted by Audubon's payroll practices are in or near the Pittsburgh area, as are their immediate supervisors and Audubon's clients for whom the inspection services were performed. ECF No. 26 at 29. Audubon asserts that the policies at issue

were developed in Texas and Louisiana, where corporate officers and Murphy's managers reside. ECF No. 33 at 19. Thus, logistics and expenses for witness participation do not weigh strongly in either parties' favor.

The third factor – court congestion – favors maintaining this action in the Western District of Pennsylvania. "This factor queries whether there is an appreciable difference in docket congestion between the two districts and favors the forum with a less congested docket and faster median time from filing to disposition or trial." Stewart, 639 F. Supp. 3d at 502 (internal citations and quotation marks omitted). As of September 2025, 3,221 civil cases were pending in the Western District of Pennsylvania, with an average disposition within 6.5 months. See Table C-3A—U.S. District Courts–Civil Judicial Business (September 30, 2025).[6] The Southern District of Texas had 7,303 pending civil cases, with an average disposition timeline of 7.6 months. Id. The Eastern District of Louisiana had 5,866 pending civil cases, with an average disposition time of 79.9 months. Id. Audubon touts the fewer filings per judge in Louisiana. ECF No. 33 at 21. But the length of time to resolve civil litigation in Louisiana weighs heavily against transfer. Finally, as compared to the Southern District of Texas, the Western District of Pennsylvania has less than half the number of civil cases pending and a comparable median time for disposition.

The fourth public interest factor – local interests of each forum – favors Pennsylvania, where Murphy's Pennsylvania state law claims arose. Any of the suggested venues could decide Murphy's FLSA claim. But to adjudicate the claims of Pennsylvania residents or non-resident

---

[6] See https://www.uscourts.gov/data-news/data-tables/2025/09/30/judicial-business/c-3a; see also https://www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf

plaintiffs who were employed in Pennsylvania, transfer to either of Audubon's preferred venues would require the designated trial court to decide matters of another state's laws.

For the same reasons, the fifth factor – public policies of the fora – weighs against transfer. Through the WPCL and PMWA, Pennsylvania has expressed a strong interest in enforcing overtime pay policies to ensure workers in the Commonwealth receive all earned compensation.

Finally, the sixth factor – trial judge's familiarity and extensive experience with applicable law – also weighs against transfer given the undersigned's familiarity with Pennsylvania and federal wage and employment law.

After weighing the Jumara public and private factors, Audubon has not met its burden to show that the interest of justice and the convenience of the parties support a transfer to the Southern District of Texas or to the Eastern District of Louisiana. The Motion to Transfer Venue is denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 15, is properly granted only as to Murphy's WPCL claim for overtime wages at a higher rate than his regular rate of pay, and the claim will be dismissed without prejudice and with leave to amend to correct the identified pleading deficiencies, if possible. The Motion to Dismiss, or in the alternative, Motion to Transfer Venue is otherwise properly denied. An appropriate Order will follow.

Dated: March 16, 2026

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing