# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL MURPHY, Individually and for
Other Similarly Situated,

              Plaintiff,

              v.

AUDUBON COMPANIES, LLC.,
AUDUBON ENGINEERING COMPANY,
L.P., and AUDUBON FIELD SOLUTIONS,
LLC.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:25 CV 815
Magistrate Judge Maureen P. Kelly

Re: ECF No. 34

## MEMORANDUM OPINION

**MAUREEN P. KELLY, United States Magistrate Judge**

Plaintiff Michael Murphy ("Murphy") commenced this action against Defendants Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. (collectively, "Audubon"), for their failure to pay wages that he and other employees like him are owed. ECF No. 1. Specifically, Murphy alleges that Audubon omitted per diem and mileage payments that should have been included in their regular rate of pay when calculating the company's overtime obligations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act, ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law, ("WPCL"), 43 P.S. § 260.1, *et seq.* Id.

Presently before the Court is Murphy's Motion for Conditional Certification and Court-Authorized Notice, seeking preliminary certification of a collective action. ECF No. 34. After consideration of the motion, the memoranda of the parties, and the record, Murphy's Motion for Conditional Certification will be granted. The proposed Notice will be amended as required herein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Audubon is an employer engaged in multi-state engineering, procurement, and construction services for industrial operators.[1] ECF No. 1 ¶ 35. To meet its business objectives, Audubon employs workers, including Murphy and other hourly employees. Id. ¶ 36.

Audubon employed Murphy as a safety inspector in Pennsylvania and West Virginia beginning in May 2023. Id. ¶ 37. Murphy's job duties require him to travel to various oil and gas pipeline job sites to ensure work is performed safely. Id. ¶ 38. Murphy regularly works more than 40 hours in a work week, and typically as many as 50-84 hours each week. Id. ¶ 40. His hours are similar to other Audubon hourly field employees. Id. ¶ 42.

At the end of each pay period, Murphy and other hourly employees receive wages in accordance with Audubon's shared payroll system. Id. ¶ 44. Until February 2025, Audubon paid Murphy a flat daily pay rate plus expenses and without premium overtime wages. In February 2025, Audubon adopted a new hourly system that continued to pay hourly wages at approximately the same dollar amount, with fixed per diem and mileage wages. Id. n. 3, ¶ 48. But Audubon failed to include the per diem and mileage wages in the regular rate of pay when calculating overtime. Murphy alleges that Audubon violated the FLSA by failing to pay Murphy and other hourly workers 1.5 times their regular rate of pay based on all remuneration for all hours worked in excess of 40 in a work week. Id. ¶ 4; see also 29 U.S.C. § 207(e).

Two other Audubon employees have filed notices of consent, seeking to join Murphy's potential collective action to recover unpaid wages. ECF No. 36. In his Declaration, James Toothman, a coworker who worked for Audubon during the relevant period asserts that like

---

[1] The facts are taken from the Complaint and accepted as true at this stage of the litigation. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (When presented with a motion to dismiss, "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

Murphy, he regularly works over forty hours per week. ECF No. 35-4. And, like Murphy, beginning in February 2025, he received a static per diem and mileage allowance each pay period that was not included in his regular rate of pay for purposes of calculating overtime pay. Id. Toothman states that to his knowledge, other inspectors that he works with are paid in the same manner, with a per diem and mileage allowance that are not included in the regular rate of pay when calculating overtime pay. Id. Murphy also presents the Declarations of two Audubon field employees who, as early as 2023 and 2024, were paid by the hour plus a per diem and mileage allowance that were not included in their regular rates of pay when Audubon calculated overtime. ECF No. 51-1; ECF No. 51-2.

Based on these allegations, Murphy seeks conditional certification of the following collective:

> **All hourly Audubon employees who were paid a per diem and mileage at any time during the last three years through final resolution of this action ("Putative Class Members").**

ECF No. 34 at 1.

Murphy has filed a brief and exhibits in support of his Motion for Certification. ECF No. 35. Audubon has filed its Brief in Opposition to the Motion with exhibits. ECF No. 42. Murphy filed a Reply in Support of Conditional Certification and Court-Authorized Notice. ECF No. 51.

The motion is ripe for consideration.

## II.    LEGAL STANDARDS

The FLSA "was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" Thomas v. TEKsystems, Inc., No. 2:21-460, 2025 WL 756067, at *4 (W.D. Pa. Mar. 10, 2025) (quoting Symczyk v. Genesis HealthCare

Corp., 656 F.3d 189, 192 (3d Cir. 2011), *overruled on other grounds by* Genesis Healthcare Corp.
v. Symczyk, 569 U.S. 66 (2013)). "'Under the 'collective action' mechanism set forth in ... §
216(b), an employee alleging an FLSA violation may bring an action on 'behalf of himself ... and
other employees similarly situated,' subject to the requirement that 'no employee shall be a party
plaintiff to any such action unless he gives consent in writing to become such a party ....'" Id.
(citation modified).

Courts in the Third Circuit "follow a two-step process for deciding whether an action may
properly proceed as a collective action under the FLSA." Camesi v. Univ. of Pittsburgh Med. Ctr.,
729 F.3d 239, 243 (3d Cir. 2013).

At step one – which is the current posture of this case –

"the court makes a preliminary determination as to whether the named plaintiffs
have made a modest factual showing that the employees identified in their
complaint are similarly situated." Id. (cleaned up). A plaintiff's burden at the first
step is light and can be met by "produc[ing] some evidence, beyond pure
speculation, of a factual nexus between the manner in which the employer's alleged
policy affected her and the manner in which it affected other employees." Symczyk
v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011) (cleaned up), *rev'd
on other grounds sub nom.*, Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66
(2013). If this burden is satisfied, "the court will 'conditionally certify' the
collective action for the purpose of facilitating notice to potential opt-in plaintiffs
and conducting pre-trial discovery." Camesi, 729 F.3d at 243. This "conditional
certification" is not really a certification at all—instead, "[i]t is actually the district
court's exercise of its discretionary power...to facilitate the sending of notice to
potential class members, and is neither necessary nor sufficient for the existence of
a representative action under the FLSA." Zavala v. Wal Mart Stores, Inc., 691 F.3d
527, 536 (3d Cir. 2012) (cleaned up).

At the second step, "with the benefit of discovery," the court "makes a conclusive
determination as to whether each plaintiff who has opted in to the collective action
is in fact similarly situated to the named plaintiff." Camesi, 729 F.3d at 243 (cleaned
up). The second step can be "triggered" by "the plaintiffs' motion for 'final
certification,' by the defendants' motion for 'decertification,' or, commonly, by
both." Id. Determining whether class members are similarly situated during this
stage "generally requires the consideration of three factors: (1) the disparate factual
and employment settings of the individual plaintiffs; (2) the various defenses
available to the defendant; and (3) fairness and procedural considerations."

4

Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. 10-948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011) (Ambrose, J.) (citations omitted).

Put simply, the first stage looks at "whether 'similarly situated' plaintiffs do in fact exist, while at the second stage, the District Court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Zavala, 691 F.3d at 536 n.4 (cleaned up).

"Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." Waltz v. Aveda Transp. & Energy Servs., Inc., No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016) (citation omitted). Given the "modest burden" at the first stage of the proceedings, "motions for conditional certification are generally successful." Id.; see also Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 352 (W.D. Pa. 2018) (Cercone, J.) (the first step's "fairly lenient standard typically results in a grant of conditional certification").

Davey v. Joy Cone Co., No. 2:24-CV-1246, 2025 WL 2430264, at *2 (W.D. Pa. Aug. 22, 2025).

## III.    DISCUSSION

### A.  Similarly Situated

Audubon contends that conditional certification is not properly granted because Murphy fails to sufficiently allege that potential opt-in plaintiffs were victims of a common policy. ECF No. 42 at 3-5.

At this initial stage of the litigation, Murphy bears the burden of demonstrating that the members of the proposed collective are similarly situated. Zavala, 691 F.3d at 534. But, as noted above, satisfying that burden initially requires only a "modest factual showing." Id. at 536.

Upon review, Murphy's evidence, including the Declarations and pay records of Audubon hourly employees, supports his contention that relevant pay rates and practices were the same for Audubon's field workers. See, e.g., ECF No. 51-1 (M. Hamilton Declaration); ECF No. 51-2 (V. Hamilton Declaration); ECF No. 51-3 (Earnings Statements). The evidence is sufficient evidence at this early stage to permit the Court to determine that the employees in the proposed collective are similarly situated. Audubon's challenges as to whether these employees are similarly situated

5

may be reconsidered at the later second certification step. See, e.g., Shiptoski v. SMG Grp., LLC, No. 3:16-CV-1216, 2018 WL 11484967, at *3 (M.D. Pa. Jan. 31, 2018), *report and recommendation adopted*, No. 3:16-CV-01216, 2018 WL 11484966 (M.D. Pa. Mar. 5, 2018) (citing Galt v. Eagleville Hosp., 238 F. Supp. 3d 733, 737 (E.D. Pa. 2017) ("Defendant will have the opportunity to revisit the merits of Plaintiffs' claims at a later time, but for purposes of conditional certification, Plaintiffs have made the requisite modest factual showing that other employees are similarly situated.")).

### B. Content of Notice

Murphy provides a proposed Notice and Consent form to send to potential collective members. ECF No. 35-1. Audubon raises six objections to the breadth and scope of the proposed form. ECF No. 42 at 6-8.

Approval of the proposed Notice is subject to the Court's discretion under the FLSA to facilitate effective notice to potential collective action plaintiffs. Hoffmann–La Roche v. Sperling, 493 U.S. 165, 169 (1989)). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." Hoffmann–La Roche, 493 U.S. at 172. In this case, the Court will exercise its discretion to approve the Notice as proposed with modifications as noted.

Three of Audubon's objections seeks to limit distribution to (1) Audubon's "inspectors," (2) that were subject the same salary structure; (3) in Pennsylvania. ECF No. 42. However, as alleged in the Complaint and demonstrated in Murphy's exhibits, Audubon subjected field employees, including, but not limited to, inspectors, to the same pay structure since at least 2023 and in locations in and outside of Pennsylvania. Thus, the Court will not limit distribution to the class of employees proposed by Audubon.

Audubon also asks the Court to limit the notice period to 30 days without reminders instead of the 60 days with a 30-day reminder in Murphy's proposed Notice. ECF No. 42 at 6 Audubon contends the requested notice period is excessive because as reflected in another action, Murphy's counsel solicited Audubon's employees through LinkedIn "since at least April 2024." Id. (citing Walker v. Audubon Companies, No. 2:25-764 (W.D. Pa. Sept. 16, 2022) (Dkt. No. 41-22).

The "overarching policies of the FLSA require that the notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." Joyce v. Colter Energy Servs. USA, Inc., No. 2:22-1367, 2024 WL 2794278, at *6 (W.D. Pa. May 31, 2024) (quoting Hoffmann-LaRoche, 493 U.S. at 174)(alterations in original). Audubon's evidence of counsel's indirect communication on a single social media outlet does not meet these purposes. Thus, the Court concludes that the proposed 60-day notice period with a 30-day reminder is reasonable and appropriate for effective communication with proposed collective members. See Moore v. Consol Pennsylvania Coal Co. LLC, No. 2:23-1991, 2024 WL 1251418, at *8 (W.D. Pa. Mar. 22, 2024) ("Since the Advertising Letters do not constitute de facto notice, Plaintiffs did not usurp the Court's authority to supervise the notice procedure. Parties do not need court-approval to locate other 'similarly situated' persons.").

Audubon next objects to distribution of the proposed Notice by email or text messages in addition to first class mail. ECF No. 42 at 7 n.2. But, as reflected in the Declaration of Mark L. Hamilton Jr., Audubon's employees work "in remote locations," such that notice by text message and email "would be more effective than mail." ECF No. 51-1 at 2. The allegations in the Complaint and Murphy's exhibits reflect that Audubon's field employees are highly mobile workers employed on short-term projects over a wide geographic area. Thus, Murphy's proposed

alternative means of Notice distribution would provide effective and timely notice within the remedial purposes of the FLSA. See Garcia v. Vertical Screen, Inc., 387 F. Supp. 3d 598, 611 (E.D. Pa. 2019) (authorizing the dissemination of notice by email); Belt v. P.F. Chang's China Bistro, Inc., No. 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020) ("[I]t is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers.").

Audubon objects to the statement in the proposed Notice that the Court has "allowed or certified a collective action lawsuit that may affect you." ECF No. 42 at 7 (citing ECF No. 35-1 at 2). Audubon argues that the proposed statement fails to accurately reflect the conditional procedural posture of this action. Id. (citing Weinmann v. Cont. Land Staff, LLC, No. 2:22-01140, 2023 WL 3881394, at *6 (W.D. Pa. June 8, 2023)). As in Weinmann, the Court agrees that any assertion that it has allowed or certified a collective action is inaccurate. Therefore, Murphy shall state that the Court has "conditionally 'certified' a collective action."

Audubon objects that the proposed notice does not inform putative plaintiffs that if they join the collective action, they may have to participate in discovery and trial, nor does it include the contact information for Audubon's counsel. ECF No. 42 at 8. The proposed amendment related to case participation is reasonable. See Lawrence v. Sun Energy Servs. LLC, No. 2:23-2155, 2024 WL 4493415, at *3 (W.D. Pa. Oct. 15, 2024) ("After conditional certification, 'the parties conduct certification-related discovery' to determine 'whether the opt-ins are "similarly situated" to the named plaintiffs.' Thus, putative members should be informed that they may be subjected to some discovery, and possibly be required to testify at trial. The fact that discovery may ultimately be limited to a 'representative sample of opt-in plaintiffs' does not obviate the appropriateness of this

advisement.") (quoting <u>Halle v. W. Penn Allegheny Health Sys.</u>, 842 F.3d 215, 225-26 (3d Cir. 2016)).

Audubon's request to include contact information for its counsel is denied. "Where a plaintiff pleads both FLSA collective and Rule 23 class claims, class members are treated as represented parties until a certification decision is made, meaning opposing counsel may not communicate with them." <u>Garcia</u>, 387 F. Supp. 3d at 610 (citing <u>Weller v. Dollar Gen. Corp.</u>, No. 17-2292, 2019 WL 1045960, at *2 (E.D. Pa. Mar. 4, 2019) (precluding communication by defense counsel in putative class action for state law wage claims and FLSA collective action under Pennsylvania law)). Here, Murphy alleges state law class action wage claims. Thus, providing potential opt-in plaintiffs with Audubon's contact information provides no benefit and will not be permitted. <u>Id.</u>

## IV    CONCLUSION

For the foregoing reasons, Murphy's Motion for Conditional Certification, ECF No. 34, will be granted and the following class be conditionally certified pursuant to 29 U.S.C. § 219(b):

> **All hourly Audubon employees who were paid a per diem and mileage at any time during the last three years through final resolution of this action ("Putative Class Members").**

The Court will also authorize Murphy to send the proposed Notice in the form presented with the changes identified in this Memorandum Opinion and any appropriate changes to the stated

calendar year(s). The final proposed Notice shall be filed for approval by the Court within fourteen days. An appropriate Order will follow.


Dated: March 16, 2026                    BY THE COURT,


MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc:    All counsel of record by Notice of Electronic Filing

10